## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| JACK HARRY SMITH, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | NO. H-04-CV-3562 |
| | § | |
| DOUGLAS DRETKE, Director, Texas | § | |
| Department of Criminal Justice | § | |
| Correctional Institutions Division | § | |
| | § | |
| Respondent. | § | |

### MEMORANDUM AND ORDER

Jack Harry Smith, a Texas inmate incarcerated under a death sentence, filed a federal petition for a writ of habeas corpus. (Docket Entry No. 7). Respondent Douglas Dretke seeks summary judgment. (Docket Entry No. 16, 27). Having considered the pleadings, the state court record, and the applicable law–particularly the Anti-Terrorism and Effective Death Penalty Act's ("AEDPA") deferential standard of review–this Court **GRANTS** Respondent's request for summary judgment and **DENIES** Smith's petition. This Court also finds, under the appropriate standard, that none of Smith's claims merit certification to the circuit court for appellate review. The Court sets forth the reasons for these rulings below.

### BACKGROUND

The State of Texas indicted Smith for the capital murder of Roy A. Deputter, committed on January 7, 1978, during an aggravated robbery. On direct review from Smith's conviction and sentence, the Court of Criminal Appeals summarized the evidence from Smith's trial as follows:

> [Smith] concedes the evidence is sufficient to support the jury's determination of his guilt of the capital murder alleged. He acknowledges that the evidence was undisputed that he was the triggerman and fired the fatal shots resulting in the death

of the deceased, Roy Deputter.

. . .

Jerome Hamilton testified that [Smith], whom he had known for about seven months, spent the night of January 6, 1978 at his Pasadena apartment, and the next morning, January 7th, he and [Smith] took [Smith's] car to the B & B Motors to have repairs made.  There they met a "Jim" and Roy Hines, and a sawed-off shotgun and .38 caliber pistol were transferred from Jim's Cadillac to [Smith's] car. Hamilton stated they had talked to Jim two days earlier about acquiring weapons.  He indicated he and [Smith] did not discuss with Jim and Hines a possible robbery at Corky's Corner, a convenience store, until that morning. Hamilton admitted that he and [Smith] drove by the store  once that morning "casing" it.  About noon they drove to the store, and waited hoping the number of customers would diminish.  [Smith] loaded both the shotgun and .38 caliber pistol and gave the shotgun to Hamilton.  Their plan was for [Smith] to go behind the counter and get the money, while Hamilton was to cover the rest of the store with his weapon.  After waiting about 15 minutes, Hamilton and [Smith] entered the store armed.  [Smith] put on a ski mask and Hamilton pulled down a stocking hose over his face.  Two teenage customers were told to move, and [Smith] walked around the counter.  He placed his pistol to the abdomen of Saddie Hollis, the store clerk, and demanded money.  Hollis began emptying money from the cash register into a paper bag.  Hamilton assumed a position in front of the counter.

About this time Roy A. Deputter, the deceased, entered the store via the back door.  Hamilton told him to move to the front of the store.  Hamilton's attention was diverted momentarily when a male customer entered the front door.  When he turned back, Deputter was holding a pistol on him.  Hamilton ducked just as Deputter fired at him.  Hollis, meanwhile, ducked behind some display cases, still holding the bag of money.  Hamilton heard two more shots, then saw Deputter stagger toward the front of the store, apparently wounded.  Deputter fired again just as he slumped to the floor.  The shot went wild.

Hollis heard one of the robbers inquire, "Where is that woman with the money?"  She then threw the bag out into the open area of the store.  [Smith] picked it up and started to the front door, but dropped the bag, spilling the money.  He and Hamilton picked up the bills or currency and left, taking Deputter's pistol with them.  They fled in [Smith's] car, and then met Jim and Hines at a beer joint, and left there in Jim's Cadilla[c].  The guns used were returned to Jim and the money was split four ways.  Later that day [Smith] and Hamilton were arrested at Hamilton's apartment.  Deputter's pistol was recovered.

Other witnesses, including Hollis, described the events of the robbery.  Several identified Smith at the scene and others said he had the appearance of one of the robbers.  As [Smith] concedes, the evidence is undisputed he fired the fatal shots.

2

> The medical testimony showed that the deceased Deputter died as a result of two gunshot wounds, either of which would have been fatal. The wounds were consistent with having been inflicted by a .38 caliber pistol.

*Smith v. State*, 676 S.W.2d 379, 382-83 (Tex. Crim. App. 1984).

A jury found Smith guilty of capital murder. The prosecution called only one punishment-phase witness, an officer from the Identification Division of the Harris County Sheriff's Department, who authenticated penitentiary packets chronicling Smith's previous Texas convictions. The "pen packets" contained the following Texas criminal judgments against Smith:

- No. 74650 – Smith pleaded guilty on May 13, 1955, to robbery by assault and received a sentence of seven years.

- No. 74651 – Smith pleaded guilty on May 13, 1955, to robbery by assault and received a sentence of seven years.

- No. 74652 – Smith pleaded guilty on May 13, 1955. to robbery by assault and received a sentence of seven years.

- No. 74658 – Smith pleaded guilty on May 13, 1955, to theft and received a sentence of seven years.

- No. 86213 – a jury found Smith guilty on April 7, 1959, of robbery by assault and he received a sentence of life in prison.

State's Exhibits 77 and 78. The prosecution also introduced into evidence a disciplinary report from Smith's 1963 prison escape attempt. State's Exhibit 79. The prosecution relied on documentary evidence of Smith's prior convictions without calling witnesses or otherwise developing the factual record. The defense objected to the records detailing Smith's 1955 convictions because the documents seemed to show that no attorney represented Smith at his guilty-plea hearing. State Record at 4697. The defense also objected to the prosecution's reliance on the disciplinary report from his escape attempt. State Record at 4695. The trial court allowed those documents to come into evidence. The defense did not call any punishment-phase witnesses. The jury answered Texas'

special issues in a manner requiring the imposition of a death sentence.[1]

The Court of Criminal Appeals affirmed Smith's conviction and sentence on direct appeal. *Smith v. State*, 676 S.W.2d 379 (Tex. Crim. App. 1984).  The Supreme Court denied certiorari review from that judgment.  *Smith v. Texas*, 471 U.S. 1061 (1985).

On October 23, 1985, Smith filed a state habeas application through appointed counsel.[2]  The state habeas court held an evidentiary hearing on June 2, 1986.  The state habeas application, however, then lay dormant for over a decade.  On April 22, 1997, Smith filed an amended state habeas application through new counsel.  Smith later filed pleadings intended to be a "superseding" and a "first amendment to the superseding" application.  On June 18, 2003, the state district court issued findings of facts and conclusions of law recommending that the Court of Criminal Appeals

---

[1]      The jury answered three special issue questions in Smith's case:

Special Issue No. 1

Do you find from the evidence beyond a reasonable doubt whether the conduct of the defendant, Jack harry Smith, that caused the death of the deceased, was committed deliberately and with the reasonable expectation that the death of the deceased or another would result?

Special Issue No. 2

Do you find from the evidence beyond a reasonable doubt whether there is a probability that the defendant, Jack Harry Smith, would commit criminal acts of violence that would constitute a continuing threat to society?

Special Issue No. 3

Do you find from the evidence beyond a reasonable doubt whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased?

[2]      Smith previously filed a *pro se* state habeas application on May 28, 1985, which the Court of Criminal Appeals denied on October 20, 1985.  *Ex parte Smith*, No. 274702-A (Tex. Crim. App. Oct. 20, 1985).

deny state habeas relief.  The Court of Criminal Appeals issued a short unpublished order dismissing some claims on procedural grounds and rejecting the merits of others.

This Court appointed counsel to prepare and litigate a federal petition on Smith's behalf. Smith's federal petition, filed on September 13, 2004, raises the following claims:

1. Trial counsel provided ineffective assistance by

    (a) failing to object to the introduction of Smith's 1959 conviction because he lacked counsel on appeal (claim one);

    (b) failing to object to the introduction of Smith's 1955 convictions because he allegedly pleaded guilty to those offenses without counsel's assistance (claim one);

    (c) performing an insufficient investigation before urging Smith to reject a favorable plea offer (claim one);

    (d) prejudicing Smith's right to testify in his own behalf (claim two).

2. The trial court improperly admitted into evidence records relating to Smith's attempted prison escape (claim three).

3. The introduction of co-defendant Jerome Hamilton's testimony violated his constitutional rights (claim four).

4. The trial court improperly dismissed a prospective juror for cause (claim five).

5. Insufficient evidence supported Smith's death sentence (claims six through nine).

Respondent initially sought summary judgment on Smith's claims, arguing that state procedural law barred federal consideration of several issues.  This Court declined to enter summary judgment because concerns remained over the putative procedural bar.  Respondent now reurges the summary judgment motion.  (Docket Entry No. 27).

Smith recently abandoned his challenges to claims four and six through nine.  (Docket Entry No. 38 at 7-8).  Smith also concedes that habeas relief is unavailable on his challenge to trial counsel's handling of the prosecution's plea offer.  (Docket Entry No. 38 at 1-4).  This Court will

consider the remainder of Smith's claims under the appropriate legal standards.

## LEGAL STANDARDS

Federal law authorizes this Court to "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Federal habeas proceedings honor the "presumption of finality and legality [that] attaches to [a petitioner's] conviction and sentence."  *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983).  Since 1996, federal courts have given effect to traditional limits on habeas review through the AEDPA's deferential standards.  The AEDPA "embodies the principles of federalism, comity, and finality of judgments," *Evans v. Cockrell*, 285 F.3d 370, 374 (5th Cir. 2002), "substantially restrict[ing] the scope of federal review of state criminal court proceedings."  *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000), *cert. denied*, 532 U.S. 1067 (2001); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) ("[Section] 2254(d)'s highly deferential standard for evaluating state-court rulings . . . demands that state court decisions be given the benefit of the doubt.").  The AEDPA forbids granting habeas relief on legal issues adjudicated on the merits in state court unless the state decision was contrary to, or an unreasonable application of, federal law.  *See* 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000).

A state court's decision is "contrary to" federal law when it arrives at a conclusion "opposite to that reached by [the Supreme Court] on a question of law" or "decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts."  *Williams*, 529 U.S. at 413; *see also Bell v. Cone*, 535 U.S. 685, 698 (2002); *Early v. Packer*, 537 U.S. 3, 7-8 (2002).  A state court unreasonably applies federal law when it "identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the particular facts of the particular state prisoner's case"

6

or when "it either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407.

The AEDPA tightly controls federal review of the factual issues raised by a habeas petition. The AEDPA "overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the nonmoving party." *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *cert. dismissed*, 541 U.S. 913 (2004). A federal habeas court must presume a state court's factual determinations to be correct, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003). Under 28 U.S.C. § 2254(d)(2) "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding[.]" *Miller-El*, 537 U.S. at 340. Significant factual findings, made on both state appellate and habeas review, guide this Court's adjudication of Smith's claims.

A petitioner's compliance with 28 U.S.C. § 2254(d) does not guarantee habeas relief. *See Horn v. Banks*, 536 U.S. 266, 272 (2002) (observing that no Supreme Court case "ha[s] suggested that a writ of habeas corpus should automatically issue if a prisoner satisfies the AEDPA standard"); *Robertson v. Cain*, 324 F.3d 297, 306 (5th Cir. 2003) (finding that 28 U.S.C. § 2254(d) "does not require federal habeas courts to grant relief reflexively"). The AEDPA's expansive deference compliments time-honored rules that govern federal habeas review. In particular, a habeas petitioner meeting his AEDPA burden must still comply with weighty jurisprudential tenets, such as the harmless error doctrine and the non-retroactivity principle, that bridle federal habeas relief. *See Thacker v. Dretke*, 396 F.3d 607, 612 n.2 (5th Cir.), *cert. denied*, ___ U.S. ___, 126 S. Ct. 80 (2005).

7

Thus, no error requires habeas relief unless it "has a 'substantial and injurious effect or influence in determining the jury's verdict,'" *Robertson*, 324 F.3d at 304 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 629 (1993)), or would not require the creation of new constitutional law, *see Banks*, 536 U.S. at 272 (relying on *Teague v. Lane*, 489 U.S. 288 (1989)).

Further, traditional limits on habeas practice impede a petitioner's ability to advance procedurally deficient habeas claims. The procedural-bar doctrine, which "has its roots in the general principle that federal courts should not disturb state court judgments based on adequate and independent state law procedural grounds," requires a petitioner to present his claims in a procedurally adequate manner to both federal and state courts. *Neville v. Dretke*, 423 F.3d 474, 480 (5th Cir. 2005) ("The doctrine derives from prudential concerns about comity and the orderly administration of justice."). "If a state court clearly and expressly bases its dismissal of a prisoner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for dismissal, the prisoner has procedurally defaulted his federal habeas claim." *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997), *cert. denied*, 523 U.S. 1139 (1998); *see also Kittelson v. Dretke*, 426 F.3d 306, 315 (5th Cir. 2005).

While this Court generally cannot consider defaulted claims, the procedural-default doctrine is "prudential, and not jurisdictional," thus allowing equity to cure procedural error. *See Neville*, 423 F.3d at 480. The Supreme Court has explained that:

> [i]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Unless a petitioner meets those equitable exceptions to the procedural-bar doctrine, this Court cannot address his claims' merits.

8

This Court adjudicates Smith's habeas claims under the substantive and procedural legal standards outlined above.

## ANALYSIS

## I.   INEFFECTIVE ASSISTANCE OF COUNSEL (claims one and two)

Three attorneys represented Smith at trial: W. B. House, Jr., Edward Mallet, and Carolyn Garcia.[3]  Smith faults trial counsel for not objecting to the introduction of several prior convictions in his trial's punishment phase because he allegedly was without an attorney's assistance in those cases.  Smith also asserts that trial counsel's representation, most particularly through a failure to investigate his prior convictions, prejudiced Smith's desire to testify at trial.

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  Under the *Strickland* standard, a criminal defendant's Sixth Amendment rights are "denied when a defense attorney's *performance* falls below an objective standard of reasonableness and thereby *prejudices* the defense." *Yarborough v. Gentry*, 540 U.S. 1, 3, (2003) (emphasis added); *see also Wiggins v. Smith*, 539 U.S. 510, 520 (2003).   "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim."  *Strickland*, 466 U.S. at 700.

To establish deficient performance, the petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland*, 466 U.S. at 687.  The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct." *Wiggins*, 539 U.S. at 521.  Instead, "[t]he proper measure of attorney

---

[3]       Unless necessary to specify one attorney's actions or testimony, the Court will refer to Smith's attorneys conjunctively as "trial counsel."

performance remains simply reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688.  In reviewing ineffectiveness claims "judicial scrutiny of counsel's performance must be highly deferential," and every effort must be made to eliminate "the distorting effect of hindsight." *Id.* at 689.  An ineffective-assistance claim focuses on "counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct[,]" because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence[.]" *Id.* at 689-90.

A petitioner must also show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694; *see also Wiggins*, 539 U.S. at 534.  A reasonable probability is one that sufficiently undermines confidence in the outcome.  *See Strickland*, 466 U.S. at 689; *Wiggins*, 539 U.S. at 534. The Court does not consider prejudice in a vacuum.  "In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Strickland*, 466 U.S. at 695.[4]

### A.   Procedural Default and Procedural Bar

Respondent argues that Smith defaulted his ineffective-assistance-of-counsel claims on state habeas review, thus barring federal consideration of their merits.  Respondent's initial summary judgment motion confidently asserted that "[t]here is no debatable issue regarding the procedural

---

[4]   "It bears repeating that the test for federal habeas purposes is *not* whether [an inmate] made that showing [required by *Strickland*].  Instead, the test is whether the state court's decision– that [the inmate] did *not* make the *Strickland*-showing–was contrary to, or an unreasonable application of, the standards, provided by the clearly established federal law (*Strickland*), for succeeding on his IAC claim." *Schaetzle v. Cockrell*, 343 F.3d 440, 444 (5th Cir. 2003), *cert. denied*, 540 U.S. 1154 (2004); *see also Busby v. Dretke*, 359 F.3d 708, 717 (5th Cir.), *cert. denied*, 541 U.S. 1087 (2004) "Of course, in reaching our decision, we must consider the underlying *Strickland* standards." *Schaetzle*, 343 F.3d at 444.

bar[.]" (Docket Entry No. 15 at 11). This Court, however, denied summary judgment based on lingering questions over the operation of state procedural law. Respondent now reasserts his summary judgment motion and candidly admits that "the procedural history of this twenty-seven-year-old-case is indeed perplexing because the state court record is unclear and, thus, perhaps, lends itself to misreadings." (Docket Entry No. 34 at 3). The Court will again review the bewildering procedural history and decide whether the obscure record provides an adequate basis to bar federal consideration of Smith's claims.

> 1.     Procedural history

On October 24, 1985, Smith filed a state habeas application ("1985 application") through appointed counsel.[5] The state habeas court held an evidentiary hearing addressing issues raised by the 1985 application. The 1985 application then festered for more than a decade. On April 22, 1997, Smith filed an amended state habeas application ("1997 amendment") through a different attorney reasserting the claims advanced in the 1985 application and raising new claims based on trial counsel's representation. The 1997 amendment raised the following grounds for relief:

> 1.     Trial counsel provided ineffective assistance by:
>
>> (a)     failing to object to the admission of Smith's 1959 conviction because no attorney represented him on appeal;

---

[5]     Smith's 1985 application raised the following grounds for relief: (1) Admission of the disciplinary report from Smith's escape attempt violated the right to cross-examination and confrontation, as well as the due process of law, because the hearsay statements contained therein lacked sufficient indicia of reliability; (2) The prosecution's agreement that led to a co-defendant testifying against Smith violated the Constitution because it occurred after the selection of five jurors; (3) The trial court erred in the exclusion of some potential jurors for cause; (4) Insufficient evidence supported the jury's answer to the first special issue; (5) Insufficient evidence supported the jury's answer to the third special issue; (6) The trial court's instructions established an unconstitutional burden of proof with respect to the first and third special issues; and (7) The Court of Criminal Appeals violated the Constitution by rejecting Smith's ineffective-assistance-of-counsel claims raised on appeal.

(b)     failing to object to the admission of case no. 74658 because he was denied the right to counsel at trial;

(c)     failing to object to the admission of case no. 74650 because he was denied the right to counsel at trial;

(d)     failing to object to the admission of case no. 74651 because he was denied the right to counsel at trial;

(e)     failing to object to the admission of case no. 74652 because he was denied the right to counsel at trial;

(f)     failing to investigate the erroneous testimony of an expert witness, causing Smith to make an uninformed rejection of the prosecution's plea offer.

2.     The admission of the disciplinary report containing the escape attempted violated the Constitution because of its hearsay contents.

3.     The prosecution's agreement that led to a co-defendant testifying against Smith violated the Constitution because it occurred after the selection of five jurors.

4.     The trial court erred by excusing a prospective juror for cause.

5.     Insufficient evidence supported the jury's answer to the first special issue.

6.     Insufficient evidence supported the jury's answer to the third special issue.

7.     The Court of Criminal Appeals violated the Constitution by rejecting his ineffective-assistance-of-counsel claims on appeal.

8.     The Court of Criminal Appeals relied on flawed reasoning in finding on direct appeal that sufficient evidence supported the first and third special issues.

On May 16, 2001, Smith filed a superceding application for habeas corpus relief ("2001 amendment"). Smith's 2001 amendment raised the same claims as advanced in his 1997 amendment with the addition of a new claim: trial counsel's allegedly inadequate challenge to the introduction

of his convictions caused him to waive his right to testify at trial.[6]  The 2001 amendment, however,

omitted Smith's claim blaming his rejection of the prosecution's plea offer on defense counsel.[7]

On June 18, 2003, the state district court issued findings of facts and conclusions of law

recommending that the Court of Criminal Appeals deny habeas relief.  The lower court considered

the merits of all the claims Smith raised in his 1997 amendment.  The lower court, however, found

under Texas' procedural law that Smith defaulted the claim he first raised in his 2001 amendment

(that trial counsel's lack of investigation into his prior conviction caused him to forfeit his right to

testify).  Specifically, the lower habeas court issued the following specific factual findings:

> 17.   The Court finds, based on a review of the pleadings filed by the applicant in
> cause number 274702-B, that the ground for relief presented in the
> applicant's May 16, 2001 superceding application wherein the applicant
> alleged that he was prejudiced in his right and desire to testify in his capital
> murder trial because of defense counsels' ineffectiveness regarding the
> applicant's 1955 and 1959 convictions was not presented in applicant's April

---

[6]     Smith enumerated his claims as follows: (1) Trial counsel provided ineffective
assistance by: (a) failing to object to the admission of Smith's 1959 conviction because no attorney
represented him on appeal; (b) failing to object to the admission of case no. 74658 because he was
denied the right to counsel at trial; (c) failing to object to the admission of case no. 74650 because
he was denied the right to counsel at trial; (d) failing to object to the admission of case no. 74651
because he was denied the right to counsel at trial; (e) failing to object to the admission of case no.
74652 because he was denied the right to counsel at trial; (f) failing to investigate the erroneous
testimony of an expert witness, causing Smith to make an uninformed rejection of a plea offer; (2)
Trial counsel's failure to object sufficiently to the invalidity of Smith's earlier conviction caused him
not to testify at trial; (3) The admission of the disciplinary report containing the escape attempted
violated the Constitution due to its reliance on hearsay; (4) The prosecution's agreement that led to
a co-defendant testifying against Smith violated the Constitution because it occurred after the
selection of five jurors; (5) The trial court erred in excusing a prospective juror for cause; (6)
Insufficient evidence supported the jury's answer to the first special issue; (7) Insufficient evidence
supported the jury's answer to the third special issue; (8) The Court of Criminal Appeals violated
the Constitution by rejecting his ineffective-assistance-of-counsel claims on appeal; and (9) The
Court of Criminal Appeals erred in finding that sufficient evidence supported the first and third
special issues by relying on evidence supporting the second special issue.

[7]     Smith subsequently filed a "first amendment to the superseding application" raising
that claim.  He later voluntarily dismissed that pleading.

13

22, 1997 habeas petition.

18.     The Court further finds that, according to the statutory requirements of TEX. CODE CRIM. PROC. ANN. art. 11.071 § 5(f), "If an amended or supplemental application is not filed within the time specified under Section 4(a) or (b), the court shall treat the application as a subsequent application under this section."

19.     The Court finds, pursuant to the statutory requirement of TEX. CODE CRIM. PROC. ANN. art. 11.071 § 5, that the applicant's claim, which was newly presented in his May 16, 2001 superceding application for writ of habeas corpus, constitutes a subsequent application for writ of habeas corpus, and the Court is required to send such claim to the Court of Appeals to determine whether such claim meets the Section 5 exception requirements of subsequent claims which can be considered by the Court; however, the trial court will address the merits of applicant's claim that he was prejudiced in his right and desire to testify in his capital murder trial because of defense counsel's ineffectiveness regarding the 1955 and 1959 convictions.

FFCL, at 5, ¶¶ 17-19.[8]

The Court of Criminal Appeals summarily rejected Smith's habeas action in a two-page order.  The substance of the Court of Criminal Appeals order reads as follows:

In the instant cause, applicant presents nine allegations challenging the validity of his conviction and resulting sentence.  We have reviewed the application and dismiss allegations one and two for failing to satisfy the requirements of Art. 11.071, Sec. 5 V.A.C.C.P.  Allegations three through nine are denied based on the trial court's findings and conclusions.  Accordingly, the application is dismissed in part and denied in part.

*Ex parte Smith*, No. 8.315-06 (Tex. Crim. App. Sept. 10, 2003) (unpublished).[9]

2.     Sufficiency of state procedural law

---

[8]     The court will cite the lower state court's findings and conclusions as FFCL, at ___, ¶ ___.

[9]     The words "denial" and "dismissal" are terms of art under Texas law.  The Court of Criminal Appeals uses "dismissal" when rejecting a claim based on procedural grounds and "denies" those claims it considers on the merits.  *See Ex parte Torres*, 943 S.W.2d 469, 474 (Tex. Crim. App. 1997) ("Dispositions relating to the merits should be labeled 'denials' while dispositions unrelated to the merits should be labeled 'dismissals[.]'").

Respondent argues that the Court of Criminal Appeals' application of Article 11.071 of the Texas Code of Criminal Procedure bars federal consideration of all the claims newly raised by the 1997 and 2001 amendments.  The Texas Legislature created Article 11.071 to codify Texas' common-law abuse-of-the-writ doctrine.  Article 11.071 § 5 limited the tardy presentation of habeas claims in three main situations: (1) when an inmate files a successive habeas application; (2) when a petitioner files an out-of-time habeas application; and (3) when a habeas applicant fails to amend his pleadings within an established time period.  The lower habeas court unambiguously relied on the third scenario to dismiss the claim raised only in Smith's 2001 amendment.  Relying on Article 11.071 § 5, the Court of Criminal Appeals, in a brief and unclear order, apparently rejected all the claims Smith raised for the first time in his 1997 and 2001 pleadings.  Because of the obscure procedural posture of the claims advanced in Smith's amendments to his 1985 application, this Court ordered the parties to provide additional briefing that would clarify what claims the state courts procedurally dismissed, what precedent supported that dismissal, and how that state-court action affected federal review.  This Court now finds that no sufficient state court procedural ruling prevents federal resolution of Smith's claims.

For the procedural-bar doctrine to prevent federal consideration of a constitutional claim, "the dismissal must 'clearly and expressly' indicate that it rests on state grounds which bar relief, and the bar must be strictly or regularly followed by the state courts, and applied to the majority of similar claims."  *Finley v. Johnson*, 243 F.3d 215, 218 (5th Cir. 2001).  The Texas Court of Criminal Appeals officially adopted its general abuse-of-the-writ doctrine in 1994.  *See Ex parte Barber*, 879 S.W.2d 889, 891 n.1 (Tex. Crim. App. 1994) (*en banc*) (plurality opinion).  "Texas's abuse-of-the-writ doctrine has, since 1994, provided an adequate state ground for the purpose of imposing a procedural bar."  *Barrientes v. Johnson*, 221 F.3d 741, 759 (5th Cir. 2000), *cert.*

15

*dismissed*, 531 U.S. 1134 (2001); *see also Emery v. Johnson*, 139 F.3d 191, 195-96 (5th Cir. 1997), *cert. denied*, 525 U.S. 969 (1998).   The federal courts have generally honored the state courts' invocation of Texas' abuse-of-the-writ bar.

Nevertheless, Texas' common-law abuse-of-the-writ doctrine seemed to have a limited operation that barred only tardy or successive *applications*.   The parties have not pointed to any common-law limitation on the *amendment* of habeas pleadings.[10]   The Texas Legislature created Article 11.071 of the Texas Code of Criminal Procedure in 1995 as a codification of the abuse-of-the-writ doctrine.   *See Ex parte Graves*, 70 S.W.3d 103, 115 & n.50 (Tex. Crim. App. 2002), the new statute apparently imposed broader procedural requirements by applying not only to the filing of new habeas actions, but also to an inmate's ability to *amend* his habeas application.   Texas law now does not distinguish between an attempt to amend a habeas petition and a new habeas action, if filed outside the proscribed time period: "If an *amended* or supplemental application is not filed within the time specified under Section 4(a) or (b), the court shall treat the application as a subsequent application under this section."   TEX. CODE CRIM. PRO. art. 11.071 § 5(f) (emphasis added).

The unique procedural wrinkle here flows from the fact that Article 11.071, by its own terms, only applies to those habeas applications filed after its effective date of September 1, 1995. Smith filed his 1985 application a decade before the statute became effective.   Smith intended his 1997 pleading to be an amendment to his 1985 application, not a new habeas action.   The Texas courts apparently agreed because they never assigned the 1997 pleading a new case number.   Nonetheless,

---

[10]      When the Court of Criminal Appeals began to apply its abuse-of-the-writ doctrine consistently in 1994, it applied that rule to habeas applications, without clarifying whether that doctrine also applied to the interjection of new claims in amended pleadings. *See Ex parte Barber*, 879 S.W.2d at 891 n.1.

the Court of Criminal Appeals expressly and exclusively relied on Article 11.071 in dismissing the challenged claims.  Respondent has not shown any exception to the statutory provisions which would retroactively prejudice habeas actions filed before that statute's effective date.

Federal habeas review's primary concern for federal law prevents a federal court from considering whether a state court improperly applied its own procedural law.  *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Poland v. Stewart*, 169 F.3d 573, 584 (9th Cir.), ("Federal habeas courts lack jurisdiction . . . to review state court applications of state procedural rules."), *cert. denied*, 528 U.S. 845 (1999); *Sweet v. Delo*, 125 F.3d 1144, 1151 (8th Cir. 1997) ("If the highest court of Missouri concludes [an inmate's] claims have not been properly raised in a state habeas proceeding, that is the end of the matter"), *cert. denied*, 532 U.S. 1010 (1998); *Schleeper v. Groose*, 36 F.3d 735, 737 (8th Cir. 1994) (finding that "a state's misapplication of its own procedural rule is not cause for default" because "[a] federal court may not re-examine a state court's interpretation and application of state law").  This Court generally must honor a State's application of its own procedural law, if that law meets certain requirements.  *See Barnes v. Thompson*, 58 F.3d 971, 974 n.2 (4th Cir.) ("A basic tenet of federal habeas review is that a federal court does not have license to question a state court's finding of procedural default, if based upon an adequate and independent state ground."), *cert. denied*, 516 U.S. 972 (1995).

To warrant federal deference, the state court must dismiss procedurally deficient claims by clearly and expressly relying on a state procedural rule.  *See Coleman*, 501 U.S. at 728.  In *Ford v. Georgia*, the Supreme Court recognized that, to prevent federal review, that state procedural rule must also have been "firmly established and regularly followed."  498 U.S. 411, 423-24 (1991) (quotation omitted). While federal courts generally "presume the adequacy and independence of a

state procedural rule," a petitioner can rebut that presumption by showing that "the state's procedural rule is not 'strictly or regularly followed.'" *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995) (quoting *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988)). Federal courts only honor those state procedural rules that are "strictly or regularly followed by the cognizant state court," and "applied evenhandedly to the vast majority of similar claims." *Amos v. Scott*, 61 F.3d 333, 339 (5th Cir.), *cert. denied*, 516 U.S. 1005 (1995); *see also Reed v. Scott*, 70 F.3d 844, 845 (5th Cir. 1995), *cert. denied*, 517 U.S. 1150 (1996).

Smith argues that no precedent indicates that the Texas courts regularly ignore statutory directives and apply Article 11.071 to those state applications pending at the time of its enactment.[11] Respondent has not shown that Texas applies its new time limitations to habeas applications pending before its enactment with "flawless compliance." *Lee v. Kemna*, 534 U.S. 362, 382 (2002). Perhaps recognizing the problem with applying the statutory limitations to Smith's 1985 application, Respondent argues that the pre-Article 11.071 abuse-of-the-writ doctrine should support the Court of Criminal Appeals' dismissal of Smith's claims. Texas, however, never relied on its common-law in Smith's case–the Court of Criminal Appeals manifestly invoked Article 11.071 alone, a statute which Respondent has not shown to have retroactive application. The Court of Criminal Appeals did not clearly and expressly base its dismissal of Smith's amended applications on Texas' common-law abuse-of-the-writ doctrine.[12]

---

[11]     The lower state habeas court, to a limited extent, appeared to comprehend this problem. The trial-level court only applied Article 11.071 to the 2001 amendment, apparently finding that an amendment filed after the effective date triggered Article 11.071's harsh provisions. Respondent provides no case law explaining how Article 11.071 applies to amended pleadings when the inmate filed his original application before the statute's effective date.

[12]     Further, Respondent has not shown that Texas' common-law operated as stringently
(continued...)

This Court, therefore, finds that no adequate procedural bar impedes consideration of Smith's challenged claims.  As the lower state habeas court, however, alternatively considered the claims' merits, this Court must apply the AEDPA deference to the resultant findings and conclusions.

### B. Trial Counsel's Failure to Prevent the Introduction of Convictions Entered Without Counsel's Assistance

After the jury found Smith guilty of capital murder, the trial court held a one-day punishment hearing.  The prosecution called one witness to testify before the jury.  Jerry Donald Satcher, an officer from the Identification Division of the Harris County Sheriff's Department, testified that he had fingerprinted Smith and then compared his fingerprints with those contained in the penitentiary packets detailing Smith's previous convictions.  State Court Record at 4705.  Satcher then read to the jury the contents of the penitentiary packets, including records from  Smith's 1955 and 1959 convictions.   State's Exhibits 77 and 79.   The prosecution also introduced into evidence a disciplinary report from Smith's 1963 escape attempt.  State's Exhibit 79.  Trial counsel objected to the introduction of the 1955 convictions because the judgments did not indicate that counsel represented Smith in those guilty-plea proceedings.  Tr. Vol. XI at 4697, 4705.  The trial court overruled those objections.  Tr. Vol. XI at 4705.  The defense did not call any witnesses in the punishment phase.

Smith contends that trial counsel should have objected to the fact that he lacked representation during both his 1955 and 1959 legal proceedings.  In 1963, the Supreme Court found that the Sixth Amendment's guarantee to counsel applied to state trials.  *See Gideon v. Wainwright*,

---

[12]      (...continued)
as Article 11.071 which applies to the amendment of pleadings, as well as new, but successive, applications. This Court simply cannot read a broader procedural holding into the Court of Criminal Appeals' explicit reliance on inapplicable statutory authority.

372 U.S. 335, 348 (1963).  The Constitution ensures that counsel will represent an indigent state defendant both at his trial and on appeal.  *See Douglas v. California*, 372 U.S. 353, 356-58 (1963). Violations of the right to counsel are "inherently prejudicial" and not subject to a harmless error analysis.  *Burgett v. Texas*, 389 U.S. 109, 115 (1967).  As a watershed pronouncement of criminal procedure, the right to counsel applies retroactively to Smith's 1955 and 1959 convictions.  *See Beard v. Banks*, 542 U.S. 406, 417 (2004) (finding that the Supreme Court has "repeatedly referred" to *Gideon* as an exception to non-retroactivity requirements).  Smith contends that, had counsel objected to the submission of convictions secured without representation, the trial court would have excluded evidence of his earlier crimes and he would not have received a death sentence.

Despite the weighty precedent Smith invokes, this Court must deny his challenge to trial counsel's handling of his prior convictions.  First, as discussed below, the Court finds that Smith has not shown that he lacked the assistance of counsel during his 1955 criminal proceedings.  Second, notwithstanding the fact that the introduction of his 1959 conviction unquestionably violated the Constitution, Smith has not shown that its admission triggered the prejudice required by the *Strickland* standard.

### 1.    1955 Convictions

Smith pleaded guilty to four offenses on May 13, 1955.  These offenses included one count of theft (Case No. 74658) and three counts of robbery by assault (Case Nos. 744650, 74651, and 74652).  The form judgment for each of these convictions shows that Smith "appeared in person and by Counsel."  Smith claims that investigation by trial counsel would have revealed that, in fact, no attorney represented him in those proceedings.  Smith acknowledges that an attorney assisted him in signing a waiver form.  However, Smith argues that the attorney "never discussed the facts or law with him, and never advised him of the rights he would surrender by pleading guilty."  (Docket

20

Entry No. 7 at 8).  Smith, therefore, argues that the "constructive denial of counsel" should have prevented the jury from considering his 1995 convictions in the penalty phase.  (Docket Entry No. 7 at 8).

Federal law prevents the enhancement of an inmate's sentence with convictions obtained when the inmate lacked legal representation.  *See Burgett*, 389 U.S. at 115 ("To permit a conviction obtained in violation of *Gideon v. Wainwright* to be used against a person either to support guilt or enhance punishment for another offense is to erode the principle of that case. Worse yet, since the defect in the prior conviction was denial of the right to counsel, the accused in effect suffers anew from the deprivation of that Sixth Amendment right.").  A constitutional violation occurs not only when a court neglects to appoint counsel, but when an attorney's performance is "'so inadequate that, in effect, no assistance of counsel is provided.'"  *Childress v. Johnson*, 103 F.3d 1221, 1228 (5th Cir. 1997) (quoting *United States v. Cronic*, 466 U.S. 648, 654 n. 11 (1984)).  "[A] defense attorney who does not participate in a critical phase of the proceedings falls short of the constitutional standard."  *Childress*, 103 F.3d at 1229.  Thus, "stand-by counsel," that is, one acting as "an 'observer, an attorney who attends the proceeding and who may offer advice, but who does not speak for the defendant or bear responsibility for his defense,'" does not provide effective constitutional representation, and convictions resting on such deficient representation cannot enhance subsequent sentences.  *Id.* at 1231 (quoting *United States v. Taylor*, 933 F.2d 307 (5th Cir. 1991)).

Contrary to his arguments, Smith's attorney in his capital-murder trial objected to the 1955 convictions because he was without counsel.  State Court Record at 4697.  Trial counsel specifically objected to the introduction of the pen packets because "they don't purport to have Mr. Smith represented by counsel."  State Court Record at 4697.  The trial court, nonetheless, denied his

objection.[13]  Trial counsel raised the same objection, albeit in a summary fashion, that Smith now

advances in his habeas petition.

Even had trial counsel objected more strenuously, Smith has not shown that he was actually

or constructively without counsel at his 1955 guilty-plea hearing.  The lower state habeas court

issued explicit factual findings with respect to this claim.  The state habeas court found that the

judgments reflected that counsel represented Smith in his guilty pleas to cases 74650, 74651, 74652,

and 74658.  FFCL, at 8, ¶ 36.  Specifically, the state habeas court found that the docket sheets and

other legal documents showed that attorney Paul Maynard represented Smith.  FFCL, at 8-9, ¶¶ 37-

41.[14]  The state habeas court found that, based on prior Texas practice and the affidavits of

individuals familiar with Texas procedure in 1955, "it is reasonable to deduce that Paul Maynard

represented [Smith] through the proceedings" in his 1955 cases.  FFCL, at 11, ¶ 54.  In short, Smith

"had the benefit of assistance of counsel by retained counsel, Paul Maynard, at the time [he] entered

his pleas of guilty in Case numbers 74658, 74650, 74651, and 745652[.]"  FFCL, at 12, ¶ 59.  The

state habeas court also found that Mr. Maynard's representation did not amount to the constructive

denial of counsel.  FFCL, at 12, ¶¶ 61-63.  In the alternative, the state habeas court also explained

that, notwithstanding any invalidity in Smith's 1955 convictions, the prosecution still could have

adduced testimony describing those crimes.  FFCL, at 13, ¶ 64.

The state habeas court concluded that Smith failed to meet *Strickland*'s performance and

prejudice prongs, especially because trial counsel objected to the 1959 convictions.  FFCL, at 23,

---

[13]     Though it is less than clear, the trial court may have understood Smith's objection
also to cover his 1959 conviction.  State Court Record at 1698.

[14]     The documents also showed that Mr. Maynard represented Smith in his 1959 jury
trial.  FFCL, at 9, ¶ 42.

22

¶¶ 5-6.  Additionally, the state habeas court concluded that, because Smith retained an attorney to represent him throughout the proceedings in those cases, he did not suffer the constructive denial of counsel.  FFCL, at 23, ¶ 7.  The state habeas court deduced that Smith "did receive the constitutionally guaranteed effective assistance of counsel in all of his 1955 convictions; therefore, [his] convictions are not void[.]"  FFCL, at 23, ¶ 8.  The state habeas court also decided that Smith failed to show harm resulting from the alleged ineffective assistance, because even if the prosecution could not provide the jury with evidence of Smith's prior convictions, it still could have elicited evidence concerning the underlying facts of the crimes to which Smith pleaded guilty.  FFCL, at 24, ¶ 10.

Smith faces a harsh burden on federal review.  This Court presumes correct any findings of the state habeas court, unless Smith rebuts that presumption through clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).  Smith has provided no evidence, much less that of a clear and convincing nature, to show that his legal representation in 1955 amounted to no legal representation at all.[15]  Smith speculates that he was appointed counsel, rather than proceeding with retained counsel as found by the state habeas courts, and makes conclusory statements regarding the extent of that attorney's efforts in his behalf.  Smith, however, fails to provide any affidavit, court document, or other means of verifying his allegations.  In the end, Smith simply fails to rebut the presumptively correct factual findings that undercut his constitutional claim.

The state habeas court found that an attorney, most likely one retained by Smith, represented

---

[15]     The state habeas court found that Smith admitted to the validity of the 1955 convictions in state court: "During the November 2002 hearing, habeas counsel advised the trial court that after speaking with [Smith] he no longer believes that [his] 1955 convictions were void" and "believes that [his] 1955 convictions were valid; that Smith was represented in his 1955 convictions by **retained counsel**."  FFCL, at 12, ¶¶ 57-58.

23

him at his 1955 guilty pleas.  The state habeas court specifically distinguished that counsel's representation from those cases condemning the constructive denial of counsel.  The AEDPA's deferential standards require this Court to accept that judgment unless Smith makes a stringent showing on federal review.  He has provided this Court with nothing but speculation and surmise.  The AEDPA, therefore, bars federal habeas relief on this claim.

        2.      1959 Conviction

        In the punishment phase, the prosecution also introduced evidence relating to Smith's 1959 conviction for robbery by assault.  Smith does not challenge the fact that counsel represented him at trial in that case.  Unlike Smith's 1955 convictions, however, he was unquestionably without counsel on his unsuccessful direct appeal from that conviction.  *See Smith v. State*, 330 S.W.2d 196, 197 (Tex. Crim. App. 1959) (listing "[n]o attorney on appeal for appellant").  In fact, when Smith's unrepresented status in his 1959 conviction came to light after his capital-murder  trial, the Texas courts allowed him an out-of-time appeal.  *See Smith v. State*, 751 S.W.2d 902, 904 (Tex. App -Hous. [14 Dist.], 1988) ("Following application for post conviction relief, the Court of Criminal Appeals granted an out-of-time appeal on the ground that he had been denied the right to counsel on appeal.").[16]  Smith alleges that the deprivation of counsel on appeal rendered that case void, and requires this Court to order a new capital punishment hearing due to counsel's failure to prevent admission of that conviction.

        Respondent's summary judgment motion largely does not contest the invalidity of Smith's 1959 conviction.  Without question, the Constitution would not have tolerated the introduction of

---

        [16]      The state habeas court apparently felt that the appointment of counsel for an out-of-time appeal of Smith's 1959 conviction cured the constitutional defect in his capital murder trial. FFCL, at 7, ¶ 30 and at 22, ¶ 2.

that conviction at Smith's capital-murder trial.  Under the *Strickland* rubric that frames this Court's analysis, it is evident that little effort on trial counsel's part would have revealed that fateful defect. The record does not show that trial counsel lodged any direct objection on that basis.  The trial attorneys essentially conceded deficient performance in the state evidentiary hearing.  Thus, Smith makes a strong showing of *Strickland* deficient performance.

Respondent, nonetheless, argues that Smith still cannot prevail.  First, Respondent contends that, even if counsel made the proper legal objection to the invalid conviction, the prosecution could have called witnesses to verify the facts underlying Smith's 1959 crime.  Second, Respondent argues that, even excluding the 1959 conviction, the jury would still have answered the special issues in a manner requiring the imposition of a death sentence.  Both of these arguments, in essence, charge Smith with failing to meet *Strickland*'s  prejudice prong.

Smith chose to advance his challenge to the admission of his 1959 conviction as an ineffective-assistance-of-counsel claim.  Had he contested the admission of the conviction as an independent constitutional violation, this Court could not engage in a prejudice or harmless error inquiry–this Court could only find that the invalid conviction's use indelibly tainted his trial.  *See Arizona v. Fulminante*, 499 U.S. 279, 294 (1991) ("A defendant is entitled to counsel at trial . . . violating this right can never be harmless error."); *Cronic*, 466 U.S. at 659 ("The Court has uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding."); *Flanagan v. United States*, 465 U.S. 259, 268 (1984) ("No showing of prejudice need be made to obtain reversal in these circumstances because prejudice to the defense is presumed.").  Yet by choosing to assert this claim under *Strickland*, Smith has accepted that reviewing courts will determine whether the introduction of the obviously invalid conviction harmed his defense (as

opposed to the automatic reversal required by an independent constitutional claim).[17]

Smith concedes that the prosecution could have presented the facts underlying his 1959 crime, though barred from presenting any evidence of his conviction. (Docket Entry No. 34 at 11). However, Smith points out obvious flaws with the assertion that the prosecution could have explored the substance of his 1959 crime. For instance no evidence exists that the prosecution made, or could have made, any effort at securing the presence of witnesses to avouch for the underlying facts. This Court must respect the state habeas court's finding that "the State *could have* presented witnesses to testify at the punishment phase of trial regarding the details of the offense in cause number 86213." FFCL, at 7, at 32 (emphasis added). That state finding does not mean that the State *would have been able to* find and call witnesses to substantiate the facts of the then almost two-decade-old offense. The State did not subpoena any witness to testify about the crime. The record does not suggest that the State could even locate witnesses to verify those events, much less that the State would have contacted them if the trial court barred use of the 1959 conviction in the punishment phase. This Court cannot overlook a constitutional violation based only on speculation and surmise.

Nonetheless, even removing the 1959 conviction from the evidentiary picture, Smith does not show a reasonable probability that the jury would have returned different answers to the special issues. The state habeas court found that Smith "had significant and numerous prior convictions and an extraneous offense upon which the jury could base their findings to the special issue[s]" FFCL,

---

[17]    In some extreme cases, a reviewing court will presume prejudice on ineffective-assistance-of-counsel claims. *See Cronic*, 466 U.S. at 659. *Cronic* only comes into play when "counsel has entirely failed to function as the client's advocate" by "fail[ing] meaningfully to oppose the prosecution's case." *Florida v. Nixon*, 543 U.S. 175, 177-78 (2004). "Under *Cronic*, the attorney's failure must be complete." *Cone*, 535 U.S. at 686. Smith makes no argument that trial counsel's failure to challenge the 1959 conviction raises to the level of complete abandonment anticipated by *Cronic*.

at 7, ¶ 31.  Smith has not rebutted this fatal factual finding.  Smith faced a short, but inculpatory, punishment phase.  The prosecution called one witness through whom they presented the pen packets detailing Smith's previous crimes.  Even excluding the 1959 conviction, the jury still had before it his 1955 convictions and his escape attempt.  The jury could also consider the brutal nature of Smith's case in determining the punishment verdict. *See Miller v. Johnson*, 200 F.3d 274, 286 (5th Cir.) (finding under Texas law that "the facts of the crime alone, if serious enough, can be sufficient to support the affirmative finding [as to the special issues]."), *cert. denied*, 531 U.S. 849 (2000).  The defense presented no mitigating evidence, and Smith points to no such evidence that counsel should have, but did not, present.  While certainly a factor deserving consideration, the 1959 conviction was not the lynchpin holding the prosecution's case together.  In light of the other evidence presented at trial, and considering the AEDPA's substantial deference, this Court finds that Smith fails to meet *Strickland*'s prejudice prong.

### C.    Trial Counsel's Ineffective Assistance Resulted in Smith's Waiver of his Right to Testify

Smith contends that trial counsel's deficient performance in this case caused him not to testify in his own behalf.  Smith's habeas petition alleges that he always wanted to testify but decided not to out fearing that the prosecution would have impeached his testimony with an extensive discussion of his prior criminal acts which otherwise only came before the jury as unspecific convictions.  Smith claims that, had counsel uncovered the invalidity of his previous convictions, he would have testified.

The state habeas court found that Smith did not testify because of his prior criminal convictions.  FFCL, at 14, ¶ 74.  The state habeas court found that, regardless of the infirmities in his earlier conviction, trial counsel would have advised him not to testify.  FFCL, at 15, ¶ 78.

Ultimately, the state habeas court rejected Smith's claim because "any assertion that [Smith] would have testified at either phase of his capital murder trial but for defense counsel's failure to investigate and object at the trial level to the admission into evidence or use for impeachment purposes of [his] prior convictions are self-serving and/or purely speculative."  FFCL, at 15, ¶ 77.

Smith does not provide this Court with any competent support for his contention that he wanted to testify at trial.  Smith provides no affidavit or similarly verified document attesting to his desire to testify in his own behalf.  Importantly, Smith fails to provide any indication of what his testimony would have been had he testified.  Smith asks this Court to grant habeas relief on the simple, unsupported allegation that he would have testified, without regard to the substance of that testimony.  Smith's argumentation deprives this Court of the ability to consider the impact of his putative testimony on his trial.  Smith's speculative assertions fail to demonstrate the existence of a constitutional violation.  The state court's rejection of this claim was not contrary to, or an unreasonable application of, federal law.  *See* 28 U.S.C. § 2254(d)(1).

## II.    INTRODUCTION OF PRIOR PRISON ESCAPE (claim three)

Smith argues that the trial court improperly allowed the introduction of records relating to Smith's prior attempted prison escape.  The prosecution entered into evidence as State's Exhibit No. 79 a disciplinary report from Smith's prison escape attempt when he was previously incarcerated. The disciplinary report provided the following details about Smith's escape attempt:

> On the morning of February 25, 1963 at about 3:00 a.m., the above-named inmate, together and in concert with inmates John J. James, #157934; Arthur E. Stepp, #164670; Clauds F. Shannon, #161018; Donnie L. Lovell, #168604; and Loyal L. James, #155418, attempted to escape by sawing out the ventilator in his cell, going through the fan on the roof, dropping from the building, and over the fence.  Inmate Smith succeeded in escaping from the yard and remained at large until apprehended by Department of Corrections' officers at about 6:30 a.m., on February 25.

State's Exhibit No. 79.  The warden who signed the report attested that it was "[t]o the best of [his] knowledge . . . a true and correct statement of the charges."  As a result of the escape, Smith apparently was assessed a punishment of solitary confinement and forfeited "overtime" credit. Smith now argues that the trial court should not have allowed this report into evidence because of its hearsay contents.

On direct review the Court of Criminal Appeals found that sufficient indicia of reliability guaranteed the disciplinary report's reliability:

> In the instant case the report alleging an attempted escape by the appellant, but certainly not in elaborate detail, was made and subscribed by the Warden, Eastham Unit, Texas Department of Corrections on February 27, 1963.  The attempted escape is alleged to have occurred on February 25, 1963.  The recommendation of the disciplinary committee was dated March 7, 1963.  It is apparent that all entries were made within two weeks of the date of the alleged attempted escape.  It was made by the warden of the prison unit where the attempted escape was alleged to have occurred.  Further, the chronological proximity of the report and the event to which it refers lends credence to the matters contained therein.  It was clearly a document prepared by an official of the Texas Department of Corrections in the systematic administration of his office.  It records a concrete event and does not include speculation from anonymous sources.

*Smith*, 676 S.W.2d at 392.  "While the State may well have been skating on thin ice in utilizing the report in place of witnesses," the Court of Criminal Appeals "conclude [d] under the circumstances that the report had the indicia of reliability to insure the integrity of the fact finding process. It was admissible[.]" *Id.*

Smith does not identify the constitutional provision that the report's admission violated, much less provide any argument that the state court's decision was contrary to, or an unreasonable application of, federal law.  Evidentiary rules are largely a matter of state law, unless constitutional provisions otherwise govern.  Presumably, Smith relies on the Sixth Amendment's guarantee that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the

29

witnesses against him." "The admission of hearsay evidence against a defendant implicates the Sixth Amendment's Confrontation Clause because the defendant is not afforded an opportunity to confront the out-of-court declarant." *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir.) (citing *Ohio v. Roberts*, 448 U.S. 56, 63 (1980)), *cert. denied*, ___ U.S. ___, 126 S. Ct. 51 (2005). Nonetheless, "a hearsay statement against a defendant may be introduced if the statement bears sufficient 'indicia of reliability.' Indicia of reliability can be shown either by demonstrating that the statement falls within a 'firmly rooted' hearsay exception or that it is supported by 'particularized guarantees of trustworthiness.'" *Ramirez*, 398 F.3d at 695 (quoting *Roberts*, 448 U.S. at 66 and *Idaho v. Wright*, 497 U.S. 805, 815-17 (1990)).

While the Court of Criminal Appeals seemed hesitant, it nonetheless found sufficient indicia of reliability to sanction the report's admission. Smith's argument, therefore, amounts to little more than a disagreement of whether Texas evidentiary rules allowed admission of the prison report into evidence. Smith has shown nothing "nothing . . . to suggest that [this Court] should transform a matter of state evidentiary law into a federal constitutional issue worthy of additional review." *Pippin v. Dretke*, 434 F.3d 782, 793 (5th Cir. 2005) (citing *Lilly v. Virginia*, 527 U.S. 116, 124-25 (1999) and *White v. Illinois*, 502 U.S. 346, 356 (1992)).[18] Smith fails to meet his burden under the AEDPA of showing that the state court's ruling was contrary to, or an unreasonable application of,

---

[18]     The Supreme Court in *Crawford v. Washington*, 541 U.S. 36, 68-69 (2004) recently held that "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is . . . confrontation[.]" Smith, however, has not argued that his evidence falls within the definition of "testimonial" found in *Crawford*. *See id.* at 75 (Rehnquist, C.J., concurring in judgment) (noting that "the Court's analysis of 'testimony' excludes at least some hearsay exceptions, such as business records and official records"); *United States v. Gonzales*, 436 F.3d 560 , 576 (5th Cir. 2006) (distinguishing *Crawford*); *Coble v. Dretke*, 417 F.3d 508, 516-17 (5th Cir. 2005) (same); *United States v. Rueda-Rivera*, 396 F.3d 678, 680 (5th Cir. 2005) (same).

federal law.  *See* 28 U.S.C. § 2254(d)(1).[19]

## III.   DISMISSAL OF A PROSPECTIVE JUROR FOR CAUSE (claim five)

Smith contends that the trial court violated his constitutional rights by dismissing prospective

juror Patricia J. Freeman for cause.[20]  During the initial jury selection questioning by the trial court,

Ms. Freeman stated that she had a conscientious objection to the death penalty.  State Court Record

at 1937.  She later indicated that she could deliver a sentence resulting in death, though it made her

a "nervous wreck" to think about it.  State Court Record at 1938-39.  She conditioned her ability to

deliver a death sentence on a case that was the "worst case [she] can think of[.]"  State Court Record

at 1940.  When questioning by the prosecution again exposed that she would have great difficulty

in returning a verdict that led to a death sentence, the trial court examined her as follows:

> The Court:  What [the prosecution] is asking you really is can you set aside your personal beliefs and follow the law as given to you by the Court or would your own personal beliefs cause you in your deliberations as a juror to decide a fact issue differently from the way you might otherwise decide it?"
>
> Ms. Freeman:  Yes, they would.

---

[19]     The Court of Criminal Appeals also found the admission of the hearsay report to be harmless:

> The facts and circumstances in each case must be looked to in formulating a decision. In addition to the facts at the guilt stage of the trial, proof was offered at the penalty stage of five prior felony convictions, a theft and four robbery by assault convictions, the last of which involved a life sentence.  Our examination of the entire record leads us to conclude that the error, if any, was harmless beyond a reasonable doubt.

*Smith*, 676 S.W.2d at 392-93.  Smith has not shown that the state court's harmlessness finding was contrary to, or an unreasonable application of, federal law.  *See* 28 U.S.C. § 2254(d)(1).

[20]     Smith's initial response to the first summary judgment motion indicated that he did not challenge the state court's rejection of this claim.  (Docket Entry No. 25 at 11).  Smith's most recent pleadings indicate a desire to "resurrect" the issue.  (Docket Entry No. 38 at 4).

State Court Record at 1948.  Trial counsel again examined Ms. Freeman, and she indicated that she

would not let her personal beliefs affect her determination of factual issues, so long as the State had

proven them beyond a reasonable doubt.  State Court Record at 1954.  Trial counsel suggested that

this "rehabilitated" Ms. Freeman.  State Court Record at 1955.  On additional questioning by the

prosecution, Ms. Freeman stated: "I am so confused by the terminology and the way you are

speaking things I thought I answered that question no, and I am sitting here thinking maybe it's a

different question."  State Court Record at 1955.  She then expressed a willingness to answer the

special issues in a way to ensure that Smith received a life sentence:

> Ms. Freeman: My conscience–I don't want it on my conscience that I have given anybody a death penalty.  Therefore I believe the beliefs I have could change my answers.
>
> The Court: It would affect your deliberations?
>
> Ms. Freeman: It would affect my deliberations, yes.
>
> The Court: It would cause you to resolve a fact issue differently from the way you would otherwise resolve it?
>
> Ms. Freeman: Yes, it–I might twist it in my mind.
>
> The Court: It's whether or not you would resolve it differently, Mrs. Freeman.
>
> Ms. Freeman:  Yes.
>
> The Court: You would?  All right.

State Court Record at 1956.

The State then moved for her dismissal for cause.  The trial court allowed trial counsel to

continuing questioning Ms. Freeman, resulting in the following discussion:

> Trial Counsel: . . . it is my understanding then that you would let your personal belief affect your determination of a fact issue if you know death was a possible punishment?

       Ms. Freeman:  Yes.

State Court Record at 1956.  The trial court dismissed Ms. Freedom for cause.  Smith now argues

that, because Ms. Freeman never said she would ignore the law or her juror's oath, the trial court

should not have granted the challenge for cause.

       It is fundamental that "a State may not entrust the determination of whether a man should

live or die to a tribunal organized to return a verdict of death."  *Witherspoon v. Illinios*, 391 U.S.

510, 521 (1968).  Exclusion of prospective jurors "hesitant in their ability to sentence a defendant

to death" without any limitations violates the Fourth and Fourteenth amendments.  *Morgan v.*

*Illinois*, 504 U.S. 719, 732 (1992); *see also Adams v. Texas*, 448 U.S. 38, 45 (1980); *Witherspoon*,

391 U.S. at 521-22.  In *Witherspoon*, the Supreme Court held that "a sentence of death cannot be

carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause

simply because they voiced general obligations to the death penalty or expressed conscientious or

religious scruples against its infliction."  391 U.S. at 522.  The Supreme Court in *Witherspooon* and

its progeny established the general rule that "a juror may not be challenged for cause based on his

views about capital punishment *unless those views would prevent or substantially impair the*

*performance of his duties as a juror in accordance with his instructions and oath*."  *Adams*, 448 U.S.

at 45 (emphasis added); *see also Wainwright v. Witt*, 469 U.S. 412, 424 (1985).  Thus, a death

sentence may not be imposed by a jury selected on "'any broader basis' than ability to follow the

law or abide their oaths."  *Adams*, 448 U.S. at 48 (quoting *Witherspoon*, 391 U.S. at 522 n.21).

       "If the juror is to obey his oath and follow the law of Texas, he must be willing not only to

accept that in certain circumstances death is an acceptable penalty but also to answer the statutory

questions without conscious distortion or bias. The State does not violate the *Witherspoon* doctrine

when it excludes prospective jurors who are unable or unwilling to address the penalty questions

with this degree of impartiality." *Adams*, 448 U.S. at 46.  The State must demonstrate through questioning that the potential juror it seeks to exclude lacks impartiality, and the judge must then determine the propriety of the State's challenge. *See Wainwright*, 469 U.S. at 423.  Thus, the key issue is "whether the juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" *Id.* at 424 (quoting *Adams*, 448 U.S. at 45).

The exclusion of potential jurors is a question of fact. *See McCoy v. Lynaugh*, 874 F.2d 954, 960 (5th Cir. 1989); *Patton v. Yount*, 467 U.S. 1025, 1036 (1984).  The factual determinations of the Texas Court of Criminal Appeals are presumed to be correct, and the petitioner has the burden of rebutting these determinations by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).  This Court can grant federal habeas relief only if the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); *see also Fuller v. Johnson*, 114 F.3d 491, 500-01 (5th Cir.) (holding that a trial court's finding of juror bias is entitled to a presumption of correctness), *cert. denied*, 522 U.S. 963 (1997); *Granviel v. Lynaugh*, 881 F.2d 185, 187 (5th Cir. 1989) (stating in a pre-AEDPA case that "[b]ecause of the difficulty of divining a prospective juror's state of mind, particularly on a cold record, we pay deference to the trial court's factual determination"), *cert. denied*, 495 U.S. 963 (1990).

The Court of Criminal Appeals found that in

the instant case the prospective juror went beyond stating her beliefs about capital punishment would affect her deliberations, which would not have disqualified her, but stated that those beliefs would cause her to resolve a fact issue differently than she would otherwise. . . . [W]e conclude that Freeman's beliefs would have prevented or substantially impaired her performance as a juror in accordance with the court's instructions and the court did not abuse its discretion in sustaining the State's challenge for cause.

*Smith*, 676 S.W.2d at 387 (citations omitted).  The Court of Criminal Appeals further noted that "at first Freeman was an 'equivocating juror' and it must be remembered that the trial judge heard the tone of her voice and observed her demeanor and was in the better position to pass on the challenge for cause presented."  *Id.*[21]

The Court of Criminal Appeals correctly noted that, at least initially, Ms. Freeman vacillated in her answers.  Later questioning more firmly showed that Ms. Freeman would condition her answers to the special issues on her opinion of the death penalty in violation of her oath.  While the record shows that Ms. Freeman wavered somewhat in her answers, the "predominant function in determining juror bias involves credibility findings whose basis cannot be easily discerned from the appellate record."  *Witt*, 469 U.S. at 429.  In *Wainwright v. Witt* the Supreme Court explained:

> What common sense should have realized experience has proved: many veniremen simply cannot be asked enough questions to reach the point where their bias has been made "unmistakably clear"; these veniremen may not know how they will react when faced with imposing the death sentence, or may be unable to articulate, or may wish to hide their true feelings.  Despite this lack of clarity in the printed record, however, there will be situations where the trial judge is left with the definite impression that a prospective juror would be unable to faithfully and impartially apply the law.

469 U.S. at 424-25 (footnote omitted).  Because the final examination of Ms. Freeman could have "left [the trial court] with the definite impression that [Ms. Freeman] would be unable to faithfully and impartially apply the law," *Id.* at 426, the trial court had a reasonable basis for granting the State's challenge for cause.  Accordingly, Smith fails to show that the Court of Criminal Appeals' rejection of his claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  *See* 28 U.S.C. § 2254 (d)(2).

---

[21]  The Court of Criminal Appeals noted that Smith "made no objection on the basis of *Witherspoon* or any other ground or basis.  Nothing is presented for review."  *Smith*, 676 S.W.2d at 387.  Respondent, however, does not argue that a state-imposed procedural deficiency bars federal consideration of this claim.

## CERTIFICATE OF APPEALABILITY

Smith has not yet requested that this Court grant him a Certificate of Appealability ("COA"), though this Court can consider the issue *sua sponte*. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). Under the AEDPA, a prisoner cannot seek appellate review from a lower court's judgment without receiving a COA. 28 U.S.C. § 2253(c). "The COA statute establishes procedural rules and requires a threshold inquiry into whether the circuit court may entertain an appeal." *Slack v. McDaniel*, 529 U.S. 473, 482 (2000). A court may only issue a COA when "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Supreme Court has explained the standard for evaluating the propriety of granting a COA on claims rejected on their merits as follows: "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy §§ 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484; *Miller-El*, 537 U.S. at 336-38. On the other hand, a district court that has denied a habeas petition on procedural grounds should issue a COA "when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Slack*, 529 U.S. at 484; *Miller-El*, 537 U.S. at 336-38. Unless the prisoner meets the COA standard, "no appeal would be warranted." *Slack*, 529 U.S. at 484.

Under the appropriate standard, the Court finds that Smith has not shown that this Court should certify any issue for appellate consideration. This Court denies Smith a COA on all the claims raised by his petition.

## CONCLUSION

Based on the foregoing, the Court concludes that Smith is not entitled to federal habeas relief.  As a result, it is hereby

**ORDERED** that Respondent's Supplemental Motion for Summary Judgment (Docket Entry No. 27) is **GRANTED**.  It is further

**ORDERED** that Jack Harry Smith's Petition for Writ of Habeas Corpus is **DENIED** and this case is **DISMISSED WITH PREJUDICE.**  The Court will not issue a Certificate of Appealability.

The Clerk will provide copies of this Order to the parties.

**SIGNED** this 28th day of March, 2006.

JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE